## Commonwealth v. Herdman

*Nicholas J. Mikesic,* for Commonwealth. *Norman A. Krumenacker III* and *Robert Davis Gleason,* for defendant.

CREANY *J.,* April 13, 1981—Defendants at various times were issued citations for speeding violations, Vehicle Code, 75 Pa.C.S.A. §3362. The several violations were detected when defendants respectively drove their automobiles over sensor strips which had been placed on the road surface by the Lower Yoder Township Police. Said strips are part of a *speed timing device* identified as an Excessive Speed Preventer (ESP) Model TK100.

Defendant Herdman is presently before this court on appeal from summary conviction which resulted from his payment of the fine without a hearing, October 17, 1980. The remaining defendants are before the court as a result of appeals from summary acquittals brought by the Commonwealth, Township of Lower Yoder. These cases were consolidated so as to address the central issue, common to each case, in a single proceeding.

## I. JURISDICTION

This court's power to entertain Mr. Herdman's appeal from a summary conviction is clear: Pa. Const. Art. 5, §9; 42 Pa.C.S.A. §5105(a).

The Commonwealth's right to appeal the dismissal of the summary prosecutions against defendants Jakubchak, McKenzie, and Misner is quite limited due to double jeopardy considerations. However, where, as in the instant matter, the final order of the district magistrate is merely a determination of a *question of law,* appeal by the Department of Environmental Resources v. Lee Bowman Asphalt, Inc., 54 Pa. Commonwealth Ct. 71, 420 A. 2d 23 (1980), construing 42 Pa.C.S.A. §5105(a);

Com. v. Long, 467 Pa. 98, 354 A. 2d 569 (1976), is proper and permissible. The district magistrate's docket transcripts of the several proceedings against these appellees disclose that the cases were dismissed on the basis that these were no signs designating the area of the alleged violations as a speed trap, i.e., warning of the use of a *speed timing enforcement device*. These transcripts evidence the underlying determination that such signs are required as a matter of law.

## II. ESP, TK100

At the trial de novo, defendants argued that the ESP, TK100 is an *electronic* device and as such may only be used by the Pennsylvania State Police: 75 Pa.C.S.A. §3368(c)(2). The Commonwealth argues that the device is *electrical* and therefore appropriately employed by local police departments: 75 Pa.C.S.A. 3368(c)(1). The issue seems to be one of semantics and the legislative history of section 3368 only exacerbates the situation.[1]

The Commonwealth's witness, Joseph Chobot, an electrical engineer, testified inter alia; that the primary distinction between an electronic device

---

1. The House of Representatives rejected provisions that would allow municipalities to use electronic devices to enforce speed restriction (1) where a municipal police force had ten or more members, or (2) where a municipality exceeds 20,000 residents, 1 Pa. Leg. J. No 111., p. 3940-3951, 3/10/76, and p. 4034-4039 3/22/76 respectively. The House passed an amendment that stated—"No police force of a municipality operating under a home rule charter shall use *mechanical or electrical* timing devices unless specifically authorized to do so by provision of this title." (Emphasis supplied.) In debate on this amendment, Representative Bonetto, the sponsor of the 1976 Vehicle Code H.B. 1817, equated the earlier notes on *electronic* devices with this amendment: 1 Pa. Leg. J. No 111, p. 4041-4043, 3/22/76.

and an electrical device is that the *input signal* of an electronic system must be *amplified* in order for the device to function while such amplification is unnecessary in an electrical device; that the input signal in the ESP TK100 system is activated mechanically by an automobile crossing the respective sensor strips, and the signal is electrical. On the cross examination this witness testified that there is no amplification of the input or return signal to the ESP TK100 device; that the ESP TK100 system is 80 percent electrical in nature and in addition some portion of the balance of the system is mechanical.

Cross examination also elicited the acknowledgement that within the ESP device there are at least 20 electronic components which do involve some degree of *internal amplification.* Also, during a comparison of this system and that of the *VASCAR* system, the witness having testified that the VASCAR system was classified as electrical-mechanical by the Department of Transportation (see 10 Pa. Bull. 3212 (1980)), the witness stated that the components of the devices are nearly identical and they were dissimilar only in that *VASCAR* is manually activated while the ESP, TK100 is activated by an electrical signal, initiated by the force of passing automobiles.

Through the testimony of Mr. Chobot, and the introduction of 10 Pa. Bull. 3197-3213 (1980), the Commonwealth substantiated the distinctions between electronic and electrical.[2] The Department of Transportation Regulation classify the ESP, TK100 as electrical.

---

2. As noted at 10 Pa. Bull. 3199 (1980), these regulations merely republish earlier proposals and adopting of regulations. ESP, TK100 proposed approval 8 Pa. Bull. 2920 (1978), adopted 8 Pa. Bull. 3378 (1978).

## III. APPROVAL OF THE ESP, TK100 DEVICE.

The Commonwealth satisfied the requirement of 75 Pa.C.S.A. §3368(d) that the type of speed timing device used be approved by the Department of Transportation, merely by introducing into evidence the regulations as published in the Pennsylvania Bulletin. Defendants contend that the department approval can only be evidenced by a certificate under seal pursuant to the Official Documents Act, 42 Pa.C.S.A. §5328.[3] However, section 3368(d) does not require a certificate of approval of the type of device use and this court is compelled to take judicial notice of the approval published in the Pennsylvania Bulletin: 45 Pa.C.S.A. §506. Accord, Com. v. McLaughlin, 51 D. & C. 2d 606, (1971); Com. v. Burns, (1974); Com. v. Wahl, 73 Lack, Jur. 110 (1972).

In addition, defendants contend that in compliance with paragraph (b) of the Department of Transportation, Bureau of Traffic Safety Operations' order regarding the processing and publication of the regulations, here at issue, has not been evidenced at trial: 10 Pa. Bull. 3199 (1980). The said paragraph required the Secretary of the Department to submit the regulations to the Department of Justice for approval as to legality prior to publication of the regulations, as is required by the Commonwealth Documents Law, of July 31, 1968, P.L. 769, as amended, 45 P.S. §1205. However, the regulations published in the Pennsylvania Bulletin are to be afforded a *presumption of validity,* 45

---

3. The Commonwealth did present a certificate of approval of the type of device at trial, it was not under seal.

Pa.C.S.A. §905 a presumption that defendants did not rebut.[4]

## VI. WARNING SIGNS

Ultimately the dispositive issue is that determined by the district magistrate in dismissing the proceedings against three of these defendants; Whether signs must be posted warning that speed restrictions are enforced by a speed timing device? District Magistrate Piurkowsky determined the issue in the affirmative on October 16, 1980. Subsequently, Cambria County President Judge H. Clifton McWillliams opined the same conclusion: Com. v. Rohrer, No. 0571-1980, December 3, 1980.

*There should be some reasonable warning, or informational sign of Excessive Speed Preventer being used.* (Emphasis in original).

. . .

Warning or informational signs of ESP operation would be a deterrent from stealth and abuse making it traffic control, which it is, rather than a revenue or fund raiser that can become prone to abuse. Further, traffic safety would be enhanced by such notice.

. . .

*Rohrer,* Id, pp. 1,2.

---

4. Defendants argue that the attorney general's office never issued an opinion on the legality of these regulations. The court considers this a non sequitur. The attorney general was not made the exclusive authority empowered to pass upon the legality of rules or regulations until the recent enactment of section 204(b) of Act 1980-164, effective January 20, 1981, 5 Pa. Leg. Service P. 856-857. At the time the pertinent regulations were proposed and adopted section 1205 of the Pennsylvania Documents Law applied requiring approval by the Department of Justice: 45 P.S. §1205.

The court in Rohrer also analogized the use of ESP with that of radar and the requirement of warning signs, citing Com. v. Brose, 412 Pa. 276, 194 A. 2d 322, (1963).

The Rohrer decision, although only having prospective effect, is persuasive. The legislative history of both April 23, 1961, P.L. 108, sec. 2, 75 P.S. §1002 (d.1)(1)(iii), adding the *exclusive* use of radar by state police to the 1959 Vehicle Code, and 75 Pa.C.S.A. §3368, is replete with debate over the concern that municipalities would abuse enforcement technology as money mills and convert the underlying purpose of the Code from traffic safety to a revenue scheme. See House, 1 Pa. Leg. J. No. 111, 3940-3951 March 10, 1976; No. 113, pp. 4034-4039, 4041-4043, March 22, 1976.

The Commonwealth argues that Rohrer is erroneously based upon Com. v. Brose, supra, in that the holding in Brose was dictated by 75 P.S. §1002, while the 1976 Vehicle Code deleted any requirement of warning signs: 75 Pa.C.S.A. §3368(c)(2). However, the Commonwealth has not presented, nor has this court discovered any case authority that positively holds that warning signs are no longer an element in establishing a conviction consequent radar detection.[5]

Defendants assert that section 3368(c)(2) deleted the requirement of warning signs only because of the restructuring of the Vehicle Code, that in fact a broader mandate of such signs is established by section 6109(c) of the 1976 Code. As noted in the

---

5. The Commonwealth cites Com. v. Gernsheimer, _____ Pa. S. _____, 419 A. 2d 528, (1980), and Com. v. Thomas, Columbia C. P. Crim. Div. No. 378-1979, for the proposition that warning signs are not an element necessary to prove speeding, detected by radar and ESP respectively. These cases do not purport to list all the necessary elements and they do not address whether warning signs were at issue.

Pennsylvania Bulletin, the regulations involved in this litigation were promulgated pursuant to 75 Pa.C.S.A. §3368 and 75 Pa.C.S.A. 6103 (Promulgation of rules and regulations by department): 10 Pa. Bull. 3199, (1980). Chapter 61 of the Vehicle Code, §§6101-6114, enumerates the powers of the department and local authorities.

Section 6102(b): "(b) Local authorities—Local authorities may exercise the powers granted in this chapter only by duly enacted ordinances of their governing bodies."

Section 6109(a) provides Specific powers of dep rtment and local authorities in 23 distinct paragraphs.

"(10) Altering or establishing speed limits as authorized in Subchapter F of Chapter 33 (relating to speed restrictions).

"(11) *Enforcement* of speed restrictions authorized under Subchapter F of Chapter 33, except that speed restrictions may be enforced by local police on a limited access or divided highway only if it is patrolled by the local police force under the terms of an agreement with the Pennsylvania State Police." (Emphasis supplied.)

(Subchapter F of Chapter 33 encompasses section 3361 to 3368.)

Certain of these 23 powers are specifically limited as listed in section 6109(c).

"(c) *When traffic-control devices required.–No regulation or ordinance enacted under subsection (a)(1), (4), (5), (6), (7), (9), (10), (11), (12), (13), (14), (15), (16), or (21) shall be effective until official traffic-control devices giving notice of the traffic regulations or ordinances are erected upon or at the entrances to the highway or part thereof affected as may be most appropriate.* (Emphasis supplied.)

.Clearly the individual treatment of the various powers, the regulation and ordinance enactment requirements, and the wording of the notice requirement all indicate that a municipality *must* (a) adopt the use of an approved speed timing device by ordinance and (b) post notice of enforcement of speed restrictions through the use of such a device *prior to using such an enforcement device.*

The Commonwealth presented no evidence at the trial as to this requirement of an ordinance; stipulated to the lack of notice signs, and denied that such signs are required by law.

The 1976 Vehicle Code, including section 6109(c), was effective July 1, 1977, thus section 6109(c) is controlling authority in each case here involved. The Commonwealth has clearly failed to establish key elements of the violation charged.[6]

## ORDER

And now, April 13th, 1981, after consideration of this evidence and arguments developed at trial and in briefs, the case law, and pertinent statutory provisions, the appeals by the Commonwealth of the

---

6. An analogous provision of the 1976 Vehicle Code, speaking to enforcement of provisions rather than to their legal effect, reinforces the court's conclusion that the legislature intended the mandatory language of section 6109(c) be given 'plain meaning.' 75 Pa.C.S.A. §3111(b):

(b) Proper position and legibility of device. — No provision of this title for which official traffic control devices are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official device is not in proper position and sufficiently legible to be seen by an ordinarily observant person. Whenever a particular section does not state that official traffic-control devices are required, the section shall be effective even though no devices are erected or in place.

summary dismissals, no. 0777-80, no. 0778-80, and no. 0779-80, are denied. The appeal of Mr. John P. Herdman no. 0764-80 is granted, conviction reversed.

## AMENDED ORDER

And now, May 27, 1981, the court having filed an opinion and order in the above captioned case under date of April 13, 1981, which affected the use of Excessive Speed Preventor (ESP) equipment; and,

The court having held and declared the said devices to be legal devices for the control of movement of vehicles within the respective municipalities within Cambria County; and,

The opinion and order further held that in order to properly enforce violations of the "speed" as detected by E.S.P., Advance Warning Signs must be posted; and further,

That authorization for use of Excessive Speed Preventor (ESP) by the respective municipality must be done by enactment of an ordinance and/or resolution designating its use; and;

It further appearing to the court that guidelines for implementation of the court's order are necessary,

The court enters the following amended order:

1. The Excessive Speed Preventor (ESP) device, is a legal and certified device to be used for control of "speed" within a municipality, for the safety of users of road or cartways in the said municipalities, and as such are designated as *Electrical-Mechanical* devices as opposed to Electronic devices;

2. An ordinance or resolution must be adopted by the municipality electing to use such devices, setting forth the type of equipment to be used, the necessity of the operator to be properly instructed and certified to use such equipment;

3. That advance warning signs be erected on roadways within the municipality notifying drivers that speed limits are being enforced by an electrical device (ESP);

The suggested signs should be:

(a). 30 inches wide by 24 inches high;

(b). Black legend and border on a white reflective background;

(c). (Suggested Message) SPEED ELECTRICALLY ENFORCED:

(d). The number of the ordinance or resolution authorizing the use of the ESP device;

(e). The signs are to be installed along any and all State highways within the municipality that uses the ESP for speed enforcement.